FILED
CLERK, U.S. DISTRICT COURT

MAR 11 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ANGELA KERN, | No.  CV 07-3024-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.

## PROCEEDINGS

Plaintiff filed this action on May 14, 2007, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on May 24, 2007, and June 4, 2007. Pursuant to the Court's Order, the parties filed a Joint Stipulation on January 2, 2008, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on February 25, 1960. [Administrative Record ("AR") at 59, 76.] She has a high school education and has completed nursing school. [AR at 73.] Plaintiff has past relevant work experience as a certified nurse's assistant and a sales clerk. [AR at 17, 68, 80-82, 361.]

On September 26, 2002, plaintiff protectively filed her applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been unable to work since April 1, 2001, due to lower back pain and neck pain. By at least January, 2003, plaintiff also alleged that she was suffering from depression and stomach pain. [AR at 56, 59-61, 67, 91, 104, 193, 207.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 30-31, 36-39, 41-45, 46.] On December 5, 2003, the ALJ dismissed the request for hearing on the basis that it was not timely filed. [AR at 32-35.] Plaintiff filed a request for review of the dismissal on December 11, 2003. [AR at 47-49.] The Appeals Council granted review, and on March 10, 2004, remanded the case back to the ALJ. [AR at 50-51.] A hearing was held on March 23, 2005, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 318-53.] A vocational expert also testified. [AR at 343-53.] On August 19, 2005, the ALJ determined that plaintiff was not disabled. [AR at 203-11.] A request for review of the hearing decision was filed on October 3, 2005. [AR at 216-18.] On March 17, 2006, the Appeals Council vacated the hearing decision, and again remanded the case back to the ALJ for further proceedings.[1] [AR at 219-22.] A second hearing was held before a different ALJ on December 18, 2006, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 354-94.] A vocational expert also testified. [AR at 383-92.] The ALJ issued a decision dated December 27, 2006, concluding that plaintiff was

---

[1] The Appeals Council directed that the ALJ upon remand update the evidentiary record, give further consideration to the examining source opinion, evaluate plaintiff's mental impairment, give further consideration to plaintiff's maximum residual functional capacity, and, if warranted, obtain supplemental evidence from a vocational expert. [AR at 221.]

1  not disabled. [AR at 13-29.] When the Appeals Council denied plaintiff's request for review on

2  March 15, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 7-9.]

3  This action followed.

4

5                                              III.

6                              **STANDARD OF REVIEW**

7          Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

8  decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

9  evidence or if it is based upon the application of improper legal standards. Moncada v. Chater,

10  60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

11         In this context, the term "substantial evidence" means "more than a mere scintilla but less

12  than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

13  adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

14  1257.  When determining whether substantial evidence exists to support the Commissioner's

15  decision, the Court examines the administrative record as a whole, considering adverse as well

16  as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

17  Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

18  must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala,

19  53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

20

21                                             IV.

22                       **THE EVALUATION OF DISABILITY**

23         Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

24  to engage in any substantial gainful activity owing to a physical or mental impairment that is

25  expected to result in death or which has lasted or is expected to last for a continuous period of at

26  least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

27  /

28  /

## A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.   The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

/

/

/

/

/

**B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[2] [AR at 18-19, 28.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: disc disease of the lumbosacral spine and disc disease of the cervical spine. [AR at 19-26, 28.] The ALJ noted that "[t]he record does not show the claimant to have any 'severe' mental impairments." [AR at 19-26, 27.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 26, 28.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to "lift and carry up to 20 pounds occasionally and 10 pounds frequently, and [to] stand, walk, and sit for about 6 hours in an 8-hour workday." [AR at 26-28.] At step four, the ALJ concluded that plaintiff is capable of performing her past relevant work as a sales clerk. [AR at 27-28.] Accordingly, the ALJ found plaintiff not disabled, and did not proceed to step five in the process. [Id.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to properly consider the existence of a severe mental impairment. Joint Stipulation ("Joint Stip.") at 4. For the reasons set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920. "The Supreme Court has recognized that including a severity inquiry at the second stage of the evaluation process permits the [Commissioner] to identify efficiently those claimants whose

---

[2]      The ALJ also determined that "the claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through March 31, 2002." [AR at 17, 28.]

[3]      RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1 || impairments are so slight that they are unlikely to be found disabled even if the individual's age,

2 || education, and experience are considered." Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994)

3 || (citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). However,

4 || an overly stringent application of the severity requirement would violate the statute by denying

5 || benefits to claimants who meet the statutory definition of "disabled." Corrao, 20 F.3d at 949 (citing

6 || Bowen v. Yuckert, 482 U.S. at 156-58). Despite use of the term "severe," most circuits, including

7 || the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening device to dispose

8 || of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v.

9 || Yuckert, 482 U.S. at 153-54); see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) ("A

10 || claimant's showing at level two that he or she has a severe impairment has been described as

11 || 'de minimis'"); see also Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989) (evaluation can

12 || stop at step two only when there is no more than minimal effect on ability to work). An impairment

13 || or combination of impairments should be found to be "non-severe" only when the evidence

14 || establishes merely a slight abnormality that has no more than a minimal effect on an individual's

15 || physical or mental ability to do basic work activities. See Corrao, 20 F.3d at 949 (citing Yuckert

16 || v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling ("SSR") 85-28[4])); see

17 || also Smolen, 80 F.3d at 1290 (citations omitted); 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic

18 || work activities" mean the abilities and aptitudes necessary to do most jobs, including

19 || "[u]nderstanding, carrying out, and remembering simple instructions," "[u]se of judgment,"

20 || "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing

21 || with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6).

22 ||        Here, plaintiff asserts that the ALJ erred in concluding that she did not suffer from a

23 || "severe" mental impairment. Joint Stip. at 4-14. Specifically, plaintiff alleges that the ALJ failed

24 || to properly "reject the consistent limitations in functioning found in the GAF score assigned by Dr.

25 ||

26 ||
       [4]   Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they

27 || "constitute Social Security Administration interpretations of the statute it administers and of its own
regulations," and are given deference "unless they are plainly erroneous or inconsistent with the

28 || Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1  Colonna, the cognitive dysfunction found by Dr. Donahue, and the significant limitations described

2  by Dr. Rovere." Id. at 10-11.  Defendant argues that "[t]he ALJ gave proper consideration to

3  [p]laintiff's alleged mental impairment and appropriately determined that her mental impairment

4  was not severe." Joint Stip. at 14.  Defendant further argues that the ALJ's step two finding was

5  supported by substantial evidence. Id. at 23.

6          The records indicate that plaintiff sought mental health treatment at West Central Mental

7  Health Clinic from March 2005 through April 2006. [AR at 275-86.]  Dr. Raphael Rovere, a staff

8  psychiatrist at West Central Mental Health Clinic, completed a Mental Work Restriction

9  Questionnaire ("Questionnaire") and an Evaluation Form for Mental Disorders ("Evaluation Form")

10  with respect to plaintiff on May 4, 2006.  [AR at 288-94.]  In the Questionnaire, Dr. Rovere

11  indicated that plaintiff suffered from a severe mental impairment, i.e., major depressive disorder.

12  [AR at 288, 294.] Dr. Rovere noted that plaintiff was moderately[5] limited in her ability to engage

13  in the following mental work activities: (1) remember work-like procedures; (2) maintain attention

14  for 2 hour segments; (3) maintain regular attendance and be punctual; (4) work in coordination

15  with or in close proximity to other people without being distracted by them; (5) make simple work-

16  related decisions; and (6) complete a normal work day without interruptions from psychologically

17  based symptoms, performing at a consistent pace without an unreasonable number of and length

18  of rest periods. [AR at 288-89.]  Dr. Rovere found that plaintiff was markedly[6] limited in her ability

19  to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.

20  [AR at 289.]  In the Evaluation Form -- consistent with his findings in the Questionnaire and the

21  treatment records -- Dr. Rovere diagnosed plaintiff with major depressive disorder, and determined

22  that plaintiff was "unable to maintain concentration for long" and had moderate to severe difficulties

23  in adapting to stresses common to the work environment. [AR at 293-94.]

24

25      [5]   A moderate limitation means that the claimant's ability to function "is significantly limited
26  such that deficiencies are obvious and could not be ignored by a supervisor, coworker, peer, or
    the general public." [AR at 290.]
27
28      [6]   A marked limitation means that the claimant's ability to function "is seriously limited but
    not severe." [AR at 290.]

1    The ALJ gave "essentially no weigh[t] to Dr. Rovere's opinions" on the grounds that the

2    "reliability of the forms completed by Dr. Rovere is highly dubious" and his "assessment of

3    [plaintiff's] mental limitations [was] exaggerated compared with the clinical evidence of record."

4    [AR at 23-24.] Instead, in concluding that "[t]he record does not show [plaintiff] to have any severe

5    mental impairments," the ALJ appears to rely on selected findings and opinions of Dr. Rosa

6    Colonna and Dr. Margaret Donahue, both of whom performed psychological evaluations of

7    plaintiff, as well as the opinion of Dr. Jason H. Yang, who performed a psychiatric evaluation.[7] The

8    ALJ noted that Dr. Colonna's mental status examination showed plaintiff to have only mild mental

9    difficulties.  As such, the ALJ gave the Global Assessment of Functioning ("GAF") score of 55[8]

10   assessed by Dr. Colonna little weight because it was inconsistent with Dr. Colonna's report as a

11   whole.[9] [AR at 22.]  The ALJ also noted Dr. Donahue's finding that plaintiff "had no significant

12   mental limitations" and Dr. Yang's GAF rating of 66,[10] as well as his finding that plaintiff "was not

13

14

---

15   [7]   As discussed below, the ALJ's failure to fully develop the record with respect to the
16   ambiguities and internal inconsistencies in the reports of certain physicians and his selective
     reliance on specific portions of those reports was improper.

17
18   [8]   A Global Assessment of Functioning score is the clinician's judgment of the individual's
     overall level of functioning.  It is rated with respect only to psychological, social, and occupational
     functioning, without regard to impairments in functioning due to physical or environmental
19   limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental
     Disorders ("DSM-IV") at 32 (4th Ed. 2000). A GAF score of 51-60 indicates "[m]oderate symptoms
20   (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in
     social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."
21   DSM-IV at 34.

22
     [9]   In the March 17, 2006, order, the Appeals Council noted that Dr. Colonna's report "is
23   internally inconsistent and contains conflicting opinions." [AR at 220.] The Appeals Council further
     noted that Dr. Colonna assigned a GAF score of 55, which indicates a mental impairment of
24   moderate severity, but assessed no limitations except a mild inability to understand, remember,
     and carry out detailed instructions.  [Id.]  Accordingly, the Appeals Council instructed the ALJ to
25   further evaluate the claimant's mental impairment on remand.

26
     [10]   A GAF score from 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and
27   mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional
     truancy, or theft within the household), but generally functioning pretty well, has some meaningful
28   interpersonal relationships." DSM-IV at 34.

1   limited in the ability to understand, remember, and carry out instructions or to respond

2   appropriately to supervision, co-workers, and work pressures." [AR at 24.]

3          Generally, the opinions of treating physicians are given greater weight than those of other

4   physicians, because treating physicians are employed to cure and therefore have a greater

5   opportunity to know and observe the claimant. Smolen, 80 F.3d at 1285; Magallanes v. Bowen,

6   881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

7   Where the treating physician's opinion is contradicted by another physician, the ALJ may only

8   reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for

9   doing so that are based on substantial evidence in the record. Lester, 81 F.3d at 830; see

10  Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993). However, even if an examining

11  physician's opinion constitutes substantial evidence, the treating physician's opinion is still entitled

12  to deference.[11] Id.; SSR 96-2p (a finding that a treating physician's opinion is not entitled to

13  controlling weight does not mean that the opinion is rejected). The ALJ must provide specific,

14  legitimate reasons for the rejection of a treating physician's opinion. See 20 C.F.R. §§

15  404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons

16  in [the] notice of determination or decision for the weight [given to the] treating source's opinion");

17  see also SSR 96-2p ("the notice of the determination or decision must contain specific reasons

18  for the weight given to the treating source's medical opinion, supported by the evidence in the

19  case record, and must be sufficiently specific to make clear to any subsequent reviewers the

20  weight the adjudicator gave to the treating source's medical opinion and the reasons for that

21  weight."). The ALJ's statement that Dr. Rovere's "assessment of [plaintiff's] mental limitations

22  [was] exaggerated compared with the clinical evidence of record" simply is not complete or wholly

23  _____

24  [11]  "In many cases, a treating source's medical opinion will be entitled to the greatest weight and
      should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p. In
25  determining what weight to accord the opinion of the treating physician, the ALJ is instructed to
      consider the following factors: length of the treatment relationship and frequency of examination;
26  nature and extent of the treatment relationship; the degree to which the opinion is supported by
      relevant medical evidence; consistency of the opinion with the record as a whole; specialization;
27  and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-
      (6), 416.927(d)(2)-(6).
28

9

accurate, and thus is not a specific and legitimate reason to reject that opinion.  Although the ALJ summarized the opinions of Dr. C. Mohr, Dr. Francisco Velarde and Dr. Thaworn Rathana-Nakintara -- all of whom were employed as staff psychiatrists at the West Central Mental Health Clinic and treated plaintiff -- he failed to note that the records and findings of those psychiatrists were consistent with Dr. Rovere's opinion.[12]  On May 10, 2005, Dr. Rathana-Nakintara diagnosed plaintiff with major depressive disorder, recurrent with psychotic features.  [AR at 280.] On March 27, 2006, Dr. Velarde performed a mental status examination, diagnosed plaintiff with major depression, recurrent with psychotic features, assigned plaintiff a GAF score of 55,[13] and prescribed plaintiff Prozac and Abilify.[14]  [AR at 279.]  On April 3, 2006, Dr. Mohr diagnosed plaintiff with major depressive disorder, recurrent with psychotic features, assigned plaintiff a GAF score of 60,[15] and prescribed plaintiff the following medications: Cymbalta, Elavil,[16] and Abilify. [AR at 276].  Given the consistency between Dr. Rovere's assessment and the assessments of the staff psychiatrists at West Central Mental Health Clinic, the Court rejects the ALJ's assertion that Dr. Rovere's assessment was "exaggerated" in comparison with the other medical evidence

---

[12]   During plaintiff's initial visit to the West Central Mental Health Clinic on March 15, 2005, plaintiff was given a GAF score of 43 [AR at 283-84], which is the same GAF score assigned to plaintiff in the initial assessment from Kedren Community Mental Health Clinic on June 1, 2005. [AR at 273.] A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34.

[13]   See supra, fn. 8.

[14]   Prozac and Abilify are used in the treatment of depression and other mental/mood disorders. http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name;" then enter the name of the drug; then select the appropriate hyperlink if there are multiple forms of the drug; then follow "Uses" tab).

[15]   See supra, fn. 8.

[16]   Cymbalta and Elavil are used in the treatment of major depression, anxiety, and other mental/mood disorders.  http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name;" then enter the name of the drug; then select the appropriate hyperlink if there are multiple forms of the drug; then follow "Uses" tab).

in the record.[17] The ALJ did not provide legally sufficient reasons for rejecting the opinion of Dr.

Rovere or offer any reasons for implicitly rejecting the findings of the staff psychiatrists that plaintiff

suffers from major depression.   At the very least, Dr. Rovere's assessment, as well as the

assessments of the staff psychiatrists, suggest that plaintiff meets the de minimus test for a severe

mental impairment at step two of the sequential analysis.  Accordingly, remand is warranted on

this issue.

Moreover, any internal inconsistencies and ambiguities in the reports of Dr. Colonna,[18] Dr.

Donahue,[19] and Dr. Rovere[20] should have triggered the ALJ's duty to seek further development

_____

[17]   Although there are internal inconsistencies in the reports of Dr. Colonna and Dr. Donahue (see discussion regarding the ALJ's duty to fully develop the record, infra), it is noted that Dr. Rovere's assessment is consistent with the GAF score assigned by Dr. Colonna and the cognitive dysfunction found by Dr. Donahue. [AR at 177-81, 288-94, 295-301.] While certain findings in the evaluations performed by Dr. Colonna and Dr. Donahue may support the ALJ's decision, as discussed below, in light of the internal inconsistencies in those reports, the ALJ should have conducted an appropriate inquiry and fully developed the record before deciding to reject the opinions contained therein that were unfavorable to the ALJ's determination of non-disability.

[18]   While a GAF score may not have a "direct correlation" to the Social Security severity requirements (see Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000)), the ALJ does not proffer any authority indicating that Dr. Colonna's assessment of a GAF score of 55 and its implications may be ignored without sufficient reason.  Moreover, the ALJ's statement that he gave the GAF score assigned by Dr. Colonna very low weight "because the GAF score of 55 is at odds with the totality of evidence presented in Dr. Colonna's report," was based on the ALJ's selective reliance on the portion of Dr. Colonna's report that was favorable to his determination of nondisability. [AR at 22.]  This is improper.  The ALJ cannot pick and choose from the evidence in order to support his conclusions.  See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability") (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)).

[19]   Plaintiff received low IQ scores when Dr. Donahue administered the Wechsler Adult Intelligence Scale examination, which suggests cognitive difficulty. [AR at 298-99.] Dr. Donahue indicated that plaintiff "is not competent to manage funds on her own behalf" and noted that "[h]er mathematical reasoning is impaired." [AR at 299-300.]  Dr. Donahue diagnosed plaintiff with dysthymia and borderline personality disorder. [AR at 300.]  However, Dr. Donahue opined that plaintiff "is capable of performing simple tasks," "has adequate concentration and attention," and "should be able to get along adequately with other people." [Id.]

[20]   In the decision, the ALJ stated that "[i]t is unclear when, if ever, Dr. Rovere examined the claimant" because Dr. Rovere failed to indicate on the Evaluation Form the "date the patient was

1 | of the record before adopting or rejecting any portion of those reports. See Tonapetyan v. Halter,

2 | 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the

3 | record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to

4 | 'conduct an appropriate inquiry.'") (quoting Smolen, 80 F.3d at 1288).  If evidence from the

5 | medical source is inadequate to determine if the claimant is disabled, an ALJ is required to

6 | recontact the medical source to determine if additional needed information is readily available.

7 | See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification

8 | from your medical source when the report from your medical source contains a conflict or

9 | ambiguity that must be resolved, the report does not contain all the necessary information, or does

10 | not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

11 | As a general rule, the record will be considered "inadequate" or "ambiguous" when a medical

12 | source has provided a medical opinion that is not supported by the evidence.  See Bayliss v.

13 | Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor if the

14 | doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.")

15 | (citation omitted); Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).  The responsibility to

16 | see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden.

17 | White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).  Here, the record was not sufficiently

18 | developed to permit the ALJ to reach the conclusion that plaintiff had no "severe" mental

19 | impairment to the extent the records of Dr. Colonna, Dr. Donahue, and Dr. Rovere were internally

20 | inconsistent and/or ambiguous.  For example, in light of the ALJ's expressed skepticism over Dr.

21 | Rovere's report, it would have required little effort on his part to recontact Dr. Rovere to determine

22 | when, and how often, Dr. Rovere examined plaintiff, especially given plaintiff's testimony that she

23 | had been seen by Dr. Rovere for one year.  The ALJ should recontact these physicians on remand

24 | in order to resolve any inconsistencies and inadequacies and fully develop the record.  See 20

25 |

26 | _____

27 | first examined," "the date of the most recent examination," and "the frequency of visits."  [AR at
23-24, 291.]  However, at the hearing on December 18, 2006, plaintiff testified that she had "been

28 | seeing [Dr. Rovere]" for one year.  [AR at 373.]

1  C.F.R. § 416.919a(b)(4) (where the medical evidence contains "[a] conflict, inconsistency,

2  ambiguity, or insufficiency," the ALJ should resolve the inconsistency by recontacting the medical

3  source).

4

5  ### VI.

6  ### REMAND FOR FURTHER PROCEEDINGS

7  As a general rule, remand is warranted where additional administrative proceedings could

8  remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

9  Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

10  In this case, remand is appropriate to properly consider the severity of plaintiff's mental impairment

11  at step two of the sequential analysis.  The ALJ is instructed to take whatever further action is

12  deemed appropriate and consistent with this decision.

13  Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

14  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

15  for further proceedings consistent with this Memorandum Opinion.

16

17  DATED: March 10, 2008

                                    PAUL L. ABRAMS

18                             UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28